UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

___

| OPELTON KELLY #225090, | ) | |
| --- | --- | --- |
| | ) | |
| Plaintiff, | ) | Case No. 2:09-cv-19 |
| | ) | |
| v. | ) | HON. R. ALLAN EDGAR |
| | ) | |
| BEATRICE HURSH, et al., | ) | |
| | ) | **OPINION** |
| Defendants. | ) | |
| | ) | |

**I. Facts**

Plaintiff Opelton Kelly, an inmate at the Earnest C. Brooks Correctional Facility, filed this civil rights action pursuant to 42 U.S.C. § 1983 against Defendants Corrections Officer Beatrice Hursh, Steven Sharrett, the Michigan Department of Corrections (MDOC), Warden David Bergh, and MDOC Director Patricia L. Caruso.

Plaintiff's complaint alleges that on November 17, 2006, he was called out of his cell by Defendant Sharrett, in order to be questioned by Defendant Hursh. Plaintiff submitted to a body search, as ordered, and was taken to an isolated room, where Defendant Hursh questioned Plaintiff about a grievance he had filed against Resident Unit Officer T. DeJung. Defendant Hursh indicated that she had a personal relationship with Officer DeJung and indicated that if Plaintiff did not drop the grievance, he would face possible retaliation. Plaintiff refused to drop the grievance. Defendant Hursh then ended the interview, claiming that Plaintiff had made an inappropriate comment. Plaintiff stood up to leave and Defendant Hursh pulled out her personal protection device, with the intent to assault Plaintiff. Defendant Sharrett then advanced on Plaintiff from behind and pushed him to the ground, causing injury to Plaintiff's arms, wrists and body. However, in Plaintiff's

amended complaint, he omits any reference to excessive force by Defendant Sharrett, and fails to claim that he suffered any injury. Plaintiff was subsequently taken to segregation.

Plaintiff later received a major misconduct for threatening behavior written by Defendant Hursh. Plaintiff was reclassified to administrative segregation on November 29, 2006, where he remained for more than six months.

Plaintiff claims that defendants' actions violated his rights under the First, Fourth, Eighth, and Fourteenth Amendments to the United States Constitution. Plaintiff is seeking compensatory and punitive damages, as well as declaratory relief.

**II. Analysis**

**A. Standard of Review**

Presently before the Court are the Defendants' Motions to Dismiss (docket #21, #30, and #35), pursuant to Fed. R. Civ. P. 12(b)(6). A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the pleading, requiring the court to determine whether the plaintiff would be entitled to relief if everything alleged in the complaint is true. *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993). "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of its claim which would entitle [the plaintiff] to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). The court must construe the complaint in the light most favorable to plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). A judge may not dismiss the complaint simply because he disbelieves the complaint's factual allegations. *Conley*, 355 U.S. at 47.

Generally, a complaint need only give "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *In re Delorean Motor Co. v. Weitzman*, 991 F.2d 1236, 1240 (6th Cir. 1993) (*quoting Conley*, 355 U.S. at 47). The fundamental purpose of pleadings under the

2

Federal Rules of Civil Procedure is to give adequate notice to the parties of each side's claims and to allow cases to be decided on the merits after an adequate development of the facts. *Mayer*, 355 U.S. at 638. While this standard is decidedly liberal, it requires more than the bare assertion of legal conclusions. *Delorean*, 991 F.2d at 1240. "In practice, a complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Id.* (internal quote omitted).

### B. Defendant MDOC

Defendant MDOC states that it is entitled to dismissal for failure to state a claim because such a claim is barred under the Eleventh Amendment. Plaintiff may not maintain a § 1983 action against the Michigan Department of Corrections. Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, if the state has not waived immunity and Congress has not expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1993). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous unpublished opinions, the Sixth Circuit has specifically held that the MDOC is absolutely immune from suit under the Eleventh Amendment. *See, e.g.*, *Turnboe v. Stegall*, No. 00-1182, 2000 WL1679478, at *2 (6th Cir. Nov. 1, 2000); *Erdman v. Mich. Dep't of Corr.*, No. 94-2109, 1995 WL 150341, at *1 (6th Cir. Apr. 5, 1995); *Cullens v. Bemis*, No. 92-1582, 1992 WL 337688, at *1 (6th Cir. Nov. 18, 1992); *Adams v. Mich. Dep't of Corr.*, No. 86-1803, 1987 WL 36006, at *1 (6th Cir. May 7, 1987). In addition, the State of Michigan (acting through the Michigan Department of

Corrections) is not a "person" who may be sued under § 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613 (2002) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989)). Therefore, the Court dismisses the Michigan Department of Corrections.

**C. Defendants Caruso and Bergh**

Defendants Caruso and Bergh claim that they are entitled to dismissal because Plaintiff's claims against them are based solely on their positions as supervisory officials in the MDOC. Liability under Section 1983 must be based on more than merely the right to control employees. *Polk Co. v. Dodson*, 454 U.S. 312, 325-26 (1981); *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978). Thus, Section 1983 liability cannot be premised upon mere allegations of *respondeat superior*. *Monell*, 436 U.S. at 691; *Polk*, 454 U.S. at 325. A party cannot be held liable under Section 1983 absent a showing that the party personally participated in, or otherwise authorized, approved or knowingly acquiesced in, the allegedly unconstitutional conduct. *See e.g. Leach v. Shelby Co. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989), *cert. denied*, 495 U.S. 932 (1990); *Hays v. Jefferson*, 668 F.2d 869, 874 (6th Cir.), *cert. denied*, 459 U.S. 833 (1982). *See also Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir.), *cert. denied* 469 U.S. 845 (1984).

Supervisory officials can be held liable for the acts of their subordinates only if plaintiff establishes that the supervisor failed to appropriately discharge his supervisory duties, and that this failure resulted in a denial or deprivation of plaintiff's federal rights. *See e.g. Leach*, 891 F.2d at 1246; *Hayes v. Vessey*, 777 F.2d 1149, 1154 (6th Cir. 1985). However, the failure of a supervisor to supervise, control or train the offending employee is not actionable absent a showing that the official implicitly encouraged, authorized, approved or knowingly acquiesced in, or in some other way directly participated in, the offensive conduct. *Leach*, 891 F.2d at 1246. Such a claim requires, at a minimum, that the official had knowledge of the offending employee's conduct at a

4

time when the conduct could be prevented, or that such conduct was otherwise foreseeable or predictable. *See e.g. Gibson v. Foltz*, 963 F.2d 851, 854 (6th Cir. 1992). In addition, plaintiff must show that defendant had some duty or authority to act. *See e.g. Birrell v. Brown*, 867 F.2d 956, 959 (6th Cir. 1989) (lower level official not liable for shortcomings of building); *Ghandi v. Police Dept. of City of Detroit*, 747 F.2d 338, 351 (6th Cir. 1984) (mere presence at the scene is insufficient grounds to impose Section 1983 liability in the absence of a duty to act); *accord Hall v. Shipley*, 932 F.2d 1147 (6th Cir. 1991). In addition, merely bringing a problem to the attention of a supervisory official is not sufficient to impose such liability. *See Shelly v. Johnson*, 684 F. Supp. 941, 946 (W.D. Mich. 1987) (Hillman, C.J.), *aff'd* 849 F.2d 228 (6th Cir. 1988). Finally, supervisory liability claims cannot be based on simple negligence. *Leach*, 891 F.2d at 1246; *Weaver v. Toombs*, 756 F. Supp. 335, 337 (W.D. Mich. 1989), *aff'd* 915 F.2d 1574 (6th Cir. 1990).

Plaintiff has not alleged facts establishing that Defendants Caruso and Bergh were personally involved in the activity which forms the basis of his claim. The only roles that Defendants Caruso and Bergh had in this action involve the denial of administrative grievances or the failure to act. Defendants Caruso and Bergh cannot be liable for such conduct under § 1983. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999), *cert. denied*, 530 U.S. 1264, 120 S. Ct. 2724 (2000). Accordingly, the Court concludes that Plaintiff's claims against Defendants Caruso and Bergh are properly dismissed for lack of personal involvement.

### D. Defendants Hursh and Sharrett

Defendants Hursh and Sharrett state that their conduct did not violate the Fourth Amendment. The Fourth Amendment protects against unreasonable searches and seizures by a representative of the government. *Hudson v. Palmer*, 468 U.S. 517, 522-526, 528 n 8 (1984). As

5

noted above, Defendant Sharrett subjected Plaintiff to a body search so that he could be taken to an isolated room to be questioned by Defendant Hursh.

The Seventh Circuit held that the Eighth Amendment's prohibition against cruel and unusual punishment provides the sole textual source protecting inmates against improper searches and that prisoners do not retain any privacy rights under the Fourth Amendment. *Johnson v. Phelan*, 69 F.3d 144 (7th Cir. 1995), *cert. denied*, 117 S. Ct. 506 (1996). Other courts, including the Sixth Circuit, have recognized a limited Fourth Amendment right to privacy, even in the prison context. *Somers v. Thurman*, 109 F.3d 614 (9th Cir. 1997); *Kent v. Johnson*, 821 F.2d 1220 (6th Cir. 1987) (recognizing a limited Fourth Amendment right of prisoner to be free from observation of private bodily parts by guards of the opposite sex without penological justification). The Supreme Court has yet to definitively resolve the issue of whether convicted prisoners retain any right of privacy protected under the Fourth Amendment. *See*, *e.g.*, *Thompson v. Souza*, 111 F.3d 694, 699 (9th Cir. 1997) ("The Supreme Court has not decided whether prison inmates retain rights cognizable under the Fourth Amendment.").

In *Bell v. Wolfish*, 441 U.S. 520 (1978), the Supreme Court examined the constitutionality of highly invasive visual body cavity inspections as part of a strip search of inmates conducted after every contact visit with a person from outside the institution. The Supreme Court assumed, without deciding, that inmates, both convicted prisoners and pretrial detainees, retained some Fourth Amendment rights upon commitment to a corrections facility. The Court found that the challenged searches did not violate the Fourth Amendment. 441 U.S. at 558. The Court stated, "The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application. In each case it requires a balancing of the need for a particular search against the invasion of personal rights that the search entails. Courts must consider the scope of the

6

particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." 441 U.S. at 559. "We do not underestimate the degree to which these searches may invade the personal privacy of inmates. Nor do we doubt, as the District Court noted, that on occasion a security guard may conduct the search in an abusive fashion. Such abuse cannot be condoned. The searches must be conducted in a reasonable manner. But we deal here with the question of whether visual body-cavity inspections can *ever* be conducted on less than probable cause. Balancing the significant and legitimate security interests of the institution against the privacy interests of the inmates, we conclude that they can." 441 U.S. at 560.

In *Hudson v. Palmer*, 468 U.S. 517 (1984) the Supreme Court addressed the question of whether an inmate had any right of privacy in his prison cell entitling him to protection of the Fourth Amendment against unreasonable searches and seizures. 468 U.S. at 522. The Court reviewed its cases establishing that prisons are not beyond reach of the Constitution as well as the fact that "imprisonment carries with it the circumscription or loss of many significant rights." 468 U.S. at 523-24. "The applicability of the Fourth Amendment turns on whether the person invoking its protection can claim a justifiable, a reasonable or legitimate expectation of privacy that has been invaded by government action. We must decide in Justice Harlan's words whether a prisoner's expectation of privacy in his prison cell is the kind of expectation that society is prepared to recognize as reasonable." 468 U.S. at 525 (citations omitted). The Supreme Court went on to hold that a prisoner has no reasonable expectation of privacy in his prison cell under the Fourth Amendment.

> Notwithstanding our caution in approaching claims that the Fourth Amendment is inapplicable in a give context, we hold that society is not prepared to recognize as legitimate any subjective expectation of privacy that a prisoner might have in his prison cell, and that accordingly, the Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell.

7

> The recognition of privacy rights for prisoners in their individual cells simply cannot be reconciled with the concept of incarceration and the needs and objectives of penal institutions.
>
> . . .
>
> Determining whether an expectation of privacy is "legitimate" or "reasonable" necessarily entails a balancing of interests. The two interests here are the interest of society in the security of its penal institutions and the interest of the prisoner in privacy within his cell. The latter interest, of course, is already limited by the exigencies of the circumstances: A prison "shares none of the attributes of privacy of a home, an automobile, an office, or a hotel room." *Lanza v. New York*, 370 U.S. 139, 143-144 (1962). We strike the balance in favor of institutional security, which we have noted is "central to all other correctional goals." *Pell v. Procunier*, 417 U.S. at 823. A right of privacy in traditional Fourth Amendment terms is fundamentally incompatible with the close and continual surveillance of inmates and their cells required to insure institutional security and internal order. We are satisfied that society would insist that a prisoner's expectation of privacy always yield to what must be considered the paramount interest of institutional security. We believe that it is accepted by our society that "[l]oss of freedom of choice and privacy are inherent incidents of confinement. *Bell v. Wolfish*, 441 U.S., at 537.
>
> . . .
>
> Our holding that respondent does not have a reasonable expectation of privacy enabling him to invoke the protections of the Fourth Amendment does not mean that he is without a remedy for calculated harassment unrelated to prison needs. . . . The Eighth Amendment always stands as a protection against "cruel and unusual punishments."

468 U.S. at 525-26, 527-28, 530.

As noted above, Plaintiff is alleging merely that he was searched prior to being taken to an isolated office to be questioned by Defendant Hursh. Plaintiff has failed to allege any facts showing that the search was not conducted in a reasonable manner. Therefore, Plaintiff's Fourth Amendment claim lacks merit.

Defendants Hursh and Sharrett also claim that they are entitled to dismissal of Plaintiff's Fourteenth Amendment due process claims regarding his misconduct conviction. In his complaint, Plaintiff claims that Defendant Hursh fabricated the misconduct ticket, which ultimately resulted in Plaintiff being placed in segregation for over 6 months. In Plaintiff's response to the motion for summary judgment, he states that Defendants' conduct deprived him of a fair hearing.

8

Plaintiff states that the odds of him receiving a fair hearing were already steep, given the fact that of the approximately 2700 misconduct tickets written in 2007, only 31 were not upheld and 118 were dismissed. Consequently, Plaintiff had a 95% chance of being found guilty under the most favorable circumstances and that given the behavior of Defendants Hursh and Sharrett, his odds of receiving a fair hearing were even lower.

Under Michigan law a prisoner is entitled to notice of a hearing, and the opportunity to present evidence and arguments. M.C.L. § 791.252. A hearing officer is not bound by state or federal evidentiary rules, but rather may consider "evidence of the type commonly relied upon by reasonably prudent persons in the conduct of their affairs." *Id.* Further, a hearing officer may deny a prisoner access to evidence that may pose a security concern if disclosed. *Id.* Plaintiff has failed to show that his constitutional rights were violated at his misconduct hearing.

Moreover, the hearing officer's conclusion that Plaintiff was guilty of the misconduct charge was supported by the record. In the reasons for finding, Hearing Officer Thomas Mohrman stated:

> I find his question is not necessary. The only two in the office were he and the report. Both their statements are known and in the record. The prisoner is guilty of the charge of threatening behavior. He admitted that he was in the hearing office and that the Sergeant was asking about a grievance he had written and an address he had. I find persuasive that the conversation then occurred as indicated inn [sic] the report rather than the Sergeant and other staff fabricating what the prisoner said and did. I find that the prisoner then made a comment to the Sergeant telling her that he would have his home boys show up for her and her family and fuck them all up. This is a comment expressing his intent to have friends come and physically attack and injure not only the Sergeant, but her family as well. The prisoner stood up first. The Sergeant would logically do so following the comment he had just made. The prisoner then physically advanced on the Sergeant who had to retreat. This was seen by other staff outside the room. The prisoner engaged in a physical act - moving towards the Sergeant to physically intimidate her to reinforce

9

> the verbal threat he had just made. The Sergeant pushed the PPD and summoned help. She did not stand first as the prisoner indicated at hearing.
>
> I find no error in the statements of the prisoner regarding Hearing Officer Maki. If she had originally been assigned his hearing and after beginning it indicated to the prisoner she know something of the situation regarding the prisoner having Lieutenant Adam's address, then it would have been appropriate to recuse herself from the hearing to assure the prisoner had a fair hearing. Even so, the prisoner's alleged possession of a staff member's address is not specifically relevant as to whether he did or did not threaten the Sergeant. I find he did by attempting to make her believe she would be attacked and injured by this prisoner's friends.

(Plaintiff's Exhibit B, docket #1.)

It is clear that Plaintiff received due process of law, and that he cannot support any claim that his constitutional rights were violated during the misconduct hearing. Prison inmates subject to serious disciplinary action are entitled to (1) 24 hours advance written notice of the charges; (2) an opportunity to appear at a hearing, to call witnesses, and present rebuttal evidence when permitting the inmate to do so will not be unduly hazardous to institutional safety; and (3) a written statement by the fact finders as to the evidence relied upon for their decision which includes a statement as to the reasons for the decision. *Wolff v. McDonnell*, 418 U.S. 539, 564-66 (1974). If the prisoner received these procedural protections, and if there were "some facts" to support the decision of the hearings officer, then the prisoner received all the process to which he was due. *Superintendent of Massachusetts Institute, Walpole v. Hill*, 472 U.S. 445 (1985). Plaintiff has failed to show that his constitutional rights were denied.

Moreover, the court notes that the only deprivation asserted by Plaintiff as a result of his misconduct conviction, was 6 months in segregation. To determine whether segregation of an inmate from the general prison population involves the deprivation of a liberty interest protected

by the due process clause, the Court must determine if the segregation imposes an "atypical and significant" hardship on the inmate "in relation to the ordinary incidents of prison life." *Jones v. Baker*, 155 F.3d 810, 811 (6th Cir. 1998) (quoting *Sandin v. Conner*, 515 U.S. 472, 483 (1995)). Under various circumstances, the Sixth Circuit has repeatedly found that confinement to administrative segregation does not present an "atypical and significant" hardship implicating a protected liberty interest. *See Jones*, 155 F.3d at 812-23 (two years of segregation while inmate was investigated for murder of prison guard in riot); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790-91 (6th Cir. 1995) (inmate serving life sentence was placed in segregation after serving thirty days of detention for misconduct conviction of conspiracy to commit assault and battery); *Mackey v. Dyke*, 111 F.3d 460 (6th Cir.1997) (one year of segregation after inmate was found guilty of possession of illegal contraband and assault and where reclassification was delayed due to prison crowding). The only allegation Plaintiff presents regarding his segregation is that its duration has been for more than 6 months. The length of the placement is not determinative. *See Jones*, 155 F.3d at 812. Plaintiff has failed to make any allegations which indicate that his segregation is "atypical and significant." Consequently, the court concludes that no liberty interest is implicated by his placement.

Defendants Hursh and Sharrett contend that they are entitled to dismissal of Plaintiff's Eighth Amendment excessive force claims. As noted above, Plaintiff initially claimed that Defendant Sharrett used excessive force when he grabbed Plaintiff from behind and forced him to the floor, causing unspecified injuries. However, every malevolent touch by a prison guard does not give rise to an Eighth Amendment cause of action, *see Hudson v. McMillian*, 503 U.S. 1, 9 (1992), and the prisoner must allege that he sustained more than de minimis injury in order to state a viable excessive force claim. *See id.* at 9-10; *Thaddeus-X v. Blatter*, 175 F.3d 378, 402 (6th Cir. 1999) (en banc). The vague assertions that Plaintiff suffered some physical injuries as he was grabbed by

11

Defendant Sharrett are not sufficient to state an Eighth Amendment claim. *See Benson v. Carlton*, No. 99-6433, 2000 WL 1175609, at *1 (6th Cir. Aug. 9, 2000) (whirling sensation in prisoner's head after fear of guard caused him to skip supper constituted a de minimis injury and did not support claim for mental or emotional suffering under the Eighth Amendment); *Scott v. Churchill*, No. 97-2061, 2000 WL 519148, at *2 (6th Cir. April 6, 2000) (plaintiff's claim that guard grabbed his neck and threatened him did not rise to the level of an Eighth Amendment violation). Plaintiff does not allege or show that he suffered specific physical injury from the incident or required medical attention. Moreover, as noted above, Plaintiff's amended complaint fails to set forth any allegations of excessive force on the part of Defendant Sharrett.

Plaintiff also appears to be claiming that his placement in segregation violated his Eighth Amendment rights. To establish an Eighth Amendment claim, the prisoner must show that he was deprived of the "minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Restrictions that are restrictive or even harsh, but are not cruel and unusual under contemporary standards, are not unconstitutional. *Id.* Thus, federal courts may not intervene to remedy conditions that are merely unpleasant or undesirable.

Placement in segregation is a routine discomfort that is "'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347; *see also Jones v. Waller*, No. 98-5739, 1999 WL 313893, at *2 (6th Cir. May 4, 1999). The Sixth Circuit has held that without a showing that basic human needs were not met, the denial of privileges as a result of administrative segregation cannot establish an Eighth Amendment violation. *See Bradley v. Evans*, No. 98-5861, 2000 WL 1277229, at *8 (6th Cir. Aug. 23, 2000), *cert. denied*, 531 U.S. 1023 (2000); *Collmar v. Wilkinson*, No. 97-4374, 1999 WL 623708, at *3 (6th Cir. Aug.11, 1999). As noted above, Plaintiff fails to specifically allege facts

12

showing that he was denied the minimal civilized measure of life's necessities. Therefore, Defendants Hursh and Sharrett are entitled to dismissal of Plaintiff's Eighth Amendment claims.

Finally, Defendants Hursh and Sharrett claim that they are entitled to dismissal of Plaintiff's retaliation claims. Plaintiff claims that on November 17, 2006, Defendant Hursh asked Plaintiff about his lawsuit, which was filed at LMF. When Plaintiff asked what that had to do with Defendant Hursh, she replied that Sherri was her girlfriend. Defendant Hursh then asked Plaintiff to sign off on the grievance against T. DeJung, but Plaintiff refused. Defendant Hursh then yelled "How did you get [Lieutenant] Adams personal address?" Plaintiff replied that Officer DeJung had placed it under his door. Defendant Hursh then asked if that was why Plaintiff had filed the grievance, and Plaintiff responded "yes." Plaintiff asserts that Defendant Hursh then told Plaintiff, "This is our reaction" and ordered Plaintiff to place his hands behind his back. Defendant Hursh stated, "If I were you I wouldn't file any grievances or lawsuits on my officers while your ass is here - especially not my friends." Then Defendant Sharrett told Plaintiff that they were going to put him where he belonged, and Plaintiff was taken to segregation. Defendant Hursh later wrote a false misconduct ticket on Plaintiff, claiming that he had threatened her.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir.1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Thaddeus-X*, 175 F.3d at 394. Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the

defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

The filing of a prison grievance and a law suit is constitutionally protected conduct for which a prisoner cannot be retaliated against. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001); *Hall v. Nusholtz*, No. 99-2442, 2000 WL 1679458, at *2 (6th Cir. Nov. 1, 2000); *Burton v. Rowley*, No. 00-1144, 2000 WL 1679463, at *2 (6th Cir. Nov. 1, 2000).

Defendants correctly note that only non-frivolous grievances count as protected conduct for purposes of a retaliation claim. *Herron v. Harrison, et al.*, 203 F.3d 410, 415 (6th Cir. 2000). Defendants claim that because Plaintiff has failed to show that the grievance he filed was non-frivolous, his retaliation claim is properly dismissed. However, it is not the Plaintiff's burden to prove that the grievance was non-frivolous. The court notes that prior to discovery or the filing of additional evidence on the part of Defendants, the presumption is that the grievance is non-frivolous. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).

Defendants also state that the fact that Plaintiff was found guilty of the misconduct ticket shows that it was not retaliatory. As noted above, Plaintiff received a hearing on the misconduct ticket and was found guilty by a non-Defendant hearing officer. The court agrees that the guilty finding on the misconduct is evidence that the ticket was not retaliatory. However, Plaintiff's claims are that Defendant Hursh is lying about the incident. As noted above, "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of its claim which would entitle [the plaintiff] to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). The court must construe the complaint in the light most favorable to plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). The court concludes that Plaintiff's retaliation claim against Defendants Hursh and Sharrett may not be dismissed.

**III. Conclusion**

In light of the foregoing, the court will grant the motions to dismiss filed by Defendants MDOC, Caruso, and Bergh (docket #30 and #35). In addition, the court will grant the motion to dismiss filed by Defendants Hursh and Sharrett (docket #21) with regard to all of Plaintiff's claims except for his retaliation claim.

An Order consistent with this Opinion will be entered.


Dated:     3/22/10                                  /s/ R. Allan Edgar
                                                    R. ALLAN EDGAR
                                                    UNITED STATES DISTRICT JUDGE